UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM A. SILVA,

        Petitioner,

v.                                                                                 Case No. 05-C-0540

CATHY FARREY,

        Respondent.

**DECISION AND ORDER**

      On August 30, 2000, Petitioner William A. Silva was convicted in the Milwaukee County Circuit Court of first-degree sexual assault of a child. He was subsequently sentenced to a prison term for twenty-five years to be followed by twenty-five years of extended supervision. Petitioner claims that his trial counsel was ineffective for conceding guilt during the closing argument and that his waiver of a jury trial was invalid because his counsel was unaware that state law procedure would preclude the introduction of "other act" evidence. Having exhausted his state court remedies, petitioner now seeks federal habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, his petition will be denied.

**BACKGROUND**

      On June 8, 2000, Silva was charged with one count of first-degree sexual assault of a child contrary to Wis. Stat. § 948.02(1). Petitioner was accused of assaulting his six-year-old niece, M.S. The alleged incident took place late in the morning of June 1, 2000, when Silva got into the same

bed as the victim and, while both were fully clothed, fondled her buttocks with his hands and rubbed his body against hers. There were no allegations of sexual intercourse or more intimate touching. The only witnesses to the incident were Silva and M.S.

Silva was not charged with habitual criminality. However, the State did file a motion *in limine* seeking to introduce evidence of three prior incidents of sexual assault under Wis. Stat. § 904.02(2). The State sought to use the evidence to show Silva's intent to commit the crime with which he was charged and to show the existence of a "plan or scheme." Two of the incidents involved prior convictions based on similar conduct.

On August 23, 2000, a week before the trial, Silva waived his right to a jury trial on the record. On August 30, 2000, the day of the trial, the circuit court heard arguments on the State's motion to admit "other acts" evidence. The circuit court ruled that all three of the incidents were admissible to show intent, plan, scheme, and the absence of mistake or accident.

At trial, both the State and the defense waived their opening statements. The State called four witnesses in its case-in-chief: M.S.(the alleged victim), her mother and father, and Milwaukee Police Department Investigator Geri Lin Gahagan. M.S. was alone with Silva at the time the assault allegedly occurred. On direct examination, she testified Silva had gotten into bed with her, placed his hand inside her shorts, and rubbed her on her right buttock. M.S. testified that she told Silva to stop and tried to get out of the bed. M.S. testified that when she attempted to get out of bed, Silva pulled her back into bed and laid on top of her. M.S. testified that Silva told her that this was "their secret" and she should not tell anyone. M.S. testified that she did not tell her mother what happened until the next morning because she was afraid.

2

The State's next witness, M.S.'s mother, testified that M.S. told her that Silva had gotten into bed with her and rubbed her behind. M.S.'s father then testified about Silva's demeanor after the alleged assault. Officer Gahagan was the last witness called by the State. She testified about when and where the alleged assault took place.

After calling four witnesses the State rested its case. The defense, without calling any witnesses, also rested its case. Following the State's closing argument, the defense presented this closing argument:

> Your Honor, it's very difficult to cross-examine a six-year-old child. I – I also believe that the child was being truthful, to some extent.
>
> Um, I'm concerned about the fact that, ah, when she was asked questions about time by the District Attorney – ah – this is after she had testified that the incident, ah, lasted approximately one minute – whether we can give credibility to that statement, whether it was longer or not. The fact still remains is that, um, she said it took one minute.
>
> First degree sexual assault is a very, very serious – very serious crime. I would assume that the State's case is based upon the fact that this young girl was 13 – under 13 years of age. I tried to have the Court find out from the witnesses what the extent of the sexual contact was. The extent of the sexual contact was the fact that he had rubbed her buttock, not her vaginal area, and, ah, that, ah, he had his clothes on. Ah, at no time was he exposed. Um, that evidently is substantiated by, ah, our Exhibit No. 1, which the police officer recorded by stating that he was clothed.
>
> Um, I suppose technically this is a case of first degree sexual assault. I don't like to say that, however, I believe it's of such insignificant proportions as to what we generally would call a first degree sexual assault, and that is that, um, I don't believe the State has proved beyond a reasonable doubt, ah, the fact that, ah, the elements have been proved.
>
> That's the only comment I have to make at this time.

(Tr. 61-62.)

3

After hearing the closing arguments, the circuit court found Silva guilty of one count of first-degree sexual assault of a child. The court noted that the facts were "somewhat uncontested." The court also stated that it did not rely on the "other acts" evidence that it had ruled was admissible at the outset of the trial. On September 21, 2000, the court sentenced Silva to twenty-five years of confinement and twenty years of extended supervision.

Following his conviction, Silva filed a postconviction motion in the circuit court arguing that (1) trial counsel was ineffective for failing to know that he could have prevented the admission of "other acts" evidence by proffering a stipulation pursuant to the holding of *State v. Wallerman*, 552 N.W.2d 128 (Ct. App. 1996), *overruled by State v. Veach*, 648 N.W.2d 447 (Wis. 2002), and that his jury waiver was consequently unknowing because of trial counsel's failure to advise him that a *Wallerman* stipulation would have prevented a jury from hearing highly prejudicial "other acts" evidence; and (2) trial counsel was ineffective for conceding Silva's guilt in his closing argument.

The postconviction circuit court determined that Silva's jury waiver was valid because he had made the decision to waive before the State filed its motion seeking the admission of "other acts" evidence. The postconviction court also determined that Silva's trial counsel's performance was deficient for lack of knowledge of the *Wallerman* holding. The postconviction court determined, however, that Silva was not prejudiced, because the trial court found him guilty without consideration of the "other acts" evidence. The trial court also determined that trial counsel's closing argument was not ineffective and did not prejudice Silva.

Silva then appealed to the Wisconsin Court of Appeals. His appeal raised the same issues addressed in his postconviction motion. The three-judge panel affirmed Silva's conviction with one judge dissenting. It held that trial counsel's performance was deficient for not knowing of the

4

*Wallerman* holding, but that Silva was not prejudiced by this conduct. The court of appeals adopted the trial court's findings that Silva freely and voluntarily waived his right to a jury trial before the trial court ruled on "other acts" evidence and that stating that Silva was "technically guilty," *Wisconsin v. Silva*, 670 N.W.2d 385, 393 (Wis. Ct. App. 2003), and emphasizing the *de minimis* nature of the offense in closing argument was an appropriate strategy.

On December 16, 2003, Silva timely filed a petition for review in the Wisconsin Supreme Court. That petition was denied on the same day. On March 17, 2004, Silva timely filed a petition for certiorari in the United States Supreme Court. That petition was denied on May 17, 2004. Having thus exhausted his state remedies, on May 16, 2005, Silva filed a petition for a writ of habeas corpus with this court based on two Sixth Amendment claims of ineffective assistance of counsel. Respondent filed an answer to the petition on June 22, 2005, and filed a brief in opposition to the petition on September 1, 2005.

## ANALYSIS

**A. The AEDPA Standard**

A federal court is authorized to grant habeas corpus relief to a state prisoner only upon a showing that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The granting of such relief by federal courts is further limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "significantly constrain any federal court review of a state court conviction. *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003). Under AEDPA, habeas corpus relief for persons serving sentences

5

imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In evaluating an application for habeas corpus pursuant to the judgment of a state court, facts determined by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant is burdened with rebutting the presumption of correctness by clear and convincing evidence. *Id.*

When determining whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law, lower federal courts must look exclusively to Supreme Court precedent in reviewing habeas petitioners' claims. *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir. 1997). Petitioners "must show that the Supreme Court has 'clearly established' the propositions essential to their position." *Mueller v. Sullivan*, 141 F.3d 1232, 1234 (7th Cir. 1998). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably extends a legal

6

principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

**B. Closing Argument**

Petitioner first claims that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment when his trial counsel conceded his guilt in closing argument. Claims for ineffective assistance of counsel are generally analyzed under the two-step test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that the counsel's performance was deficient." *Id.* at 687. This means that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The second part of the *Strickland* analysis requires that the defendant show that "the deficient performance prejudiced the defense." *Id.* When a defendant is challenging his conviction, this requires a showing that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 668. Without a specific showing that the alleged errors of counsel likely made a difference in the outcome of the case, a defendant ordinarily is not entitled to relief.

In this case, petitioner does not argue that the outcome of his case would likely have been different absent his attorney's closing argument. Neither at his trial, nor at the hearing on his postconviction motion, did he offer an account different from what M.S. testified had occurred. At no point in the proceeding has he pointed to any evidence that his trial counsel failed to introduce that would have called into question her version of the offense or suggested any motive she may have had to fabricate such a story if it was not in fact true. Indeed, the trial court found the evidence

7

sufficient to convict without even considering the fact that petitioner had committed three similar offenses in the past. (Tr. at 64.)

Normally, a defendant's failure to show prejudice resulting from the alleged deficiencies of counsel would be fatal to a claim of ineffective assistance. Petitioner argues, however, that under *United States v. Cronic*, 466 U.S. 648 (1984), no showing of prejudice is required. In *Cronic*, decided the same day as *Strickland*, the Court noted that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658.

In elaborating on this point, *Cronic* identified three situations where prejudice could be presumed. The most obvious, the Court noted, was where counsel was completely denied. "The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659. Similarly, the Court noted that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659. Finally, the Court held that where counsel was called upon to render assistance under circumstances where even a fully competent attorney would be unable to provide effective assistance, prejudice would be presumed. *Id.* at 659-60.

Petitioner argues that his trial counsel's closing argument falls within the second exception recognized in *Cronic*. By conceding his guilt, petitioner argues, "trial counsel failed to function in any meaningful sense as the state's adversary." (Br. in Supp. of Pet. at 15.) Petitioner argues that this concession not only constructively denied him the right to counsel at a critical stage in the proceedings, but it effectively carried the state's burden, leaving petitioner worse off than if he had

8

no counsel at all. He argues that "trial counsel's concession of guilt and his concession of the victim-witness' credibility was tantamount to a guilty plea entered without the consent of the accused, and constituted a complete abdication of the adversarial role required of counsel under *Cronic*." (*Id.*)

In rejecting petitioner's claim, the Wisconsin courts concluded that under the circumstances, trial counsel's concession was a reasonable trial strategy and that Silva had not overcome "the strong presumption that trial counsel rendered adequate assistance. In the words of the Court of Appeals majority,

> Silva's trial attorney did as well as most attorneys would have done. Stating that Silva was "technically guilty" had two beneficial effects: first, it telegraphed to the trial court that if any doubt existed in the trial court's mind, the minor nature of the act could act as a controlling factor in finding Silva not guilty; and second, the strategy emphasized the idea that the matter was overcharged, setting up an argument for leniency at sentencing. Thus, counsel did not abdicate his role in the adversarial process.

*Silva*, 670 N.W.2d at 393. Given the strength of the State's case, the Court of Appeals concluded that counsel's closing argument was "not beyond the realm of 'reasonably effective representation.'" *Id.* (*quoting State v. McMahon*, 519 N.W.2d 621, 626 (Ct. App. 1994). In a concurring opinion, Judge Fine went even further, suggesting that in the face of the evidence presented at trial, not to concede guilt would have been "suicidal advocacy." *Silva*, 670 N.W.2d at 397 (Fine, J., concurring).

With all due respect to the Wisconsin Court of Appeals, I cannot agree. There are cases in which conceding the client's guilt can be a reasonable trial strategy. In *Florida v. Nixon*, 125 S.Ct. 551 (2004), for example, the Supreme Court rejected the lower courts' application of *Cronic* where the defendant's attorney conceded guilt during the guilt phase of a capital case in the face of overwhelming evidence of guilt. The Court noted that "although such a concession in a run-of-the-

9

mine trial might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus." *Id.* at 562. In death penalty cases, the Court explained, the evidence is frequently overwhelming and the crime especially heinous since prosecutors are unlikely to seek such a drastic sanction in the absence of those factors. Saving his client's life is frequently the best outcome attainable by counsel. Under those circumstances, "counsel cannot be deemed ineffective for attempting to impress the jury with his candor and his unwillingness to engage in 'a useless charade.'" *Id.* at 563 (*citing Cronic*, 466 U.S. at 656-57, n. 19).

Likewise, in cases in which a defendant is facing multiple charges or conviction on a lesser included charge is a possibility, conceding guilt on a less serious charge may be a reasonable strategy to avoid conviction on the greater offense or offenses. *See, e.g., United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) ("Though an unusual defense strategy, we have held that conceding guilt to one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy which, by itself, does not rise to the level of deficient performance."); *State v. Gordon*, 663 N.W.2d 765, 773 (Wis. 2003) (holding that counsel's conceding guilt in the face of overwhelming evidence of less serious charges was "a reasonable tactical approach under the circumstances, plainly calculated to maintain credibility with the jury and enhance the prospects of acquittal on the two more serious charges."). *See generally* Robert J. Nolan, Note, *Prejudice Presumed: The Decision To Concede Guilt To Lesser Offenses During Opening Statements*, 55 Hastings L.J. 965, 975-75 (2004). But this was not such a case.

Petitioner was facing a single count of first degree sexual assault of a child. Conviction of a lesser offense was not an option, nor was a sentence of death. The trial court's only alternative to

10

a finding of guilty of the crime charged was a finding of not guilty. To concede guilt under these circumstances would not have served any interest of the defendant. It would not have "telegraphed to the trial court that if any doubt existed in the trial court's mind, the minor nature of the act could act as a controlling factor in finding Silva not guilty." *Silva*, 670 N.W.2d at 393. Instead, it would have told the trial court that it should have no doubt of Silva's guilt because even his own attorney thinks he is guilty. As petitioner contends, the notion that "by conceding guilt, trial counsel could provide a basis for the court to find Silva not guilty" is both "bizarre" and "irrational." (Pet. Br. In Supp. at 17.) It was of course reasonable for counsel to emphasize the relatively minor nature of the sexual contact alleged as part of his closing argument. But doing so would not have required a concession of guilt.

There is also no basis for the suggestion that counsel had no reasonable alternative but to concede guilt in the face of overwhelming evidence, that to do otherwise would amount to "suicidal advocacy." The only direct evidence of Silva's guilt was the testimony of a six-year old child who reported the incident to her mother the following day. There were no eye-witnesses, no physical evidence, and no confession. Under these circumstances, one would expect counsel to at least emphasize the high burden of proof placed on the State in criminal cases, the general limitations of young children, the absence of any other direct evidence. Given the circumstances of the case, counsel's failure to challenge more forcefully the sufficiency of the State's evidence in his closing argument cannot be explained as a reasonable trial strategy.

I also agree with petitioner's contention that for his attorney to concede his client's guilt in his closing argument under the circumstances of this case would give rise to a presumption of prejudice under *Cronic*. The Supreme Court held in *Cronic* that prejudice would be presumed "if

11

the accused is denied counsel at a critical stage of his trial." *Id.* at 659. In a footnote to that very statement, the Court cited *Herring v. New York*, 422 U.S. 853 (1975), in which it had presumed prejudice and held that a defendant was denied the effective assistance of counsel when the trial judge, pursuant to a state statute, denied defense counsel the opportunity to make a closing argument. If not allowing counsel to present a closing argument gives rise to a presumption of prejudice, it necessarily follows that such a presumption would also arise where an attorney uses the opportunity for a closing argument to concede that his client is guilty of the very crime with which he is charged. I agree with petitioner that a defendant's own attorney telling the factfinder that his client is guilty is far more devastating to the defendant's case than not hearing from the attorney at all. (Br. In Supp. at 15, 24.)

Where I disagree with petitioner, however, is in his characterization of his attorney's closing argument as conceding his guilt. Although the Wisconsin Court of Appeals accepted petitioner's characterization of his attorney's argument as a concession of his guilt, consideration of the argument in its totality convinces me that it was not. Counsel never stated that his client was "technically guilty." He conceded that M.S. was "truthful, to some extent" (Tr. 61), but stopped short of saying that her testimony was sufficient to establish all the elements of the crime. At no time did counsel invite the trial court to find his client guilty because the evidence established his guilt beyond a reasonable doubt. In fact, he argued just the opposite, stating "I don't believe the State had proved beyond a reasonable doubt, ah, the fact that, ah, the elements have been proved." (Tr. 62.) To be sure, counsel did uncritically repeat M.S.'s account of the offense and comment "I suppose technically this is a case of first degree sexual assault." (*Id.*) But considered in context and in light of his statement that the State had not proven the elements of the offense beyond a reasonable doubt,

12

a more reasonable interpretation of counsel's comment is that, even assuming M.S.'s testimony was entirely true, the evidence established only a technical violation of the law. It was not a concession of his client's guilt. Compare *Wiley v. Sowders*, 647 F.2d 642, 645 (6th Cir. 1981) ("I can't stand up here and say they didn't do it, they haven't proven that they did it, I'd be foolish and naive and immature. Because they did do it. And the Commonwealth's Attorney's office has proven to you that they have done it.").

This is not to say counsel's performance was adequate. The mere fact that his argument could be understood as a concession of his client's guilt is sufficient to show that it was not. But while counsel's closing argument was clearly deficient and well below the range that one could consider reasonably effective assistance, I conclude that it was not such as to free petitioner from the obligation to show that he was somehow prejudiced by it. As the Court stressed in *Bell v. Cone*, 535 U.S. 685 (2002), the exception recognized in *Cronic* applies only where "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Id.* at 697 (quoting *Cronic,* 466 U.S. at 659) (emphasis in original). The Court noted that "[f]or purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, the difference is not of degree but of kind." *Id.* In this case, trial counsel made objections to evidence and cross-examined all four of the State's witnesses. Although the cross-examination was brief and ineffective, petitioner has failed to suggest any areas of inquiry that were neglected. He has not shown that trial counsel entirely failed to subject the prosecution's case to meaningful adversarial testing. I therefore conclude that *Cronic* does not apply.

It follows that in order for petitioner to establish that he is entitled to relief based on his attorney's deficient closing argument, he must show prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

13

different." *Strickland*, 466 U.S. at 694. This he has failed to do. Accordingly, petitioner is not entitled to § 2254 relief on account of his trial attorney's closing argument.

**C. Waiver of Right to Jury Trial**

In his petition here, as he did on appeal, petitioner also claims that he did not knowingly and intelligently waive his right to a jury trial. This claim is based on trial counsel's ineffective assistance because trial counsel was unaware of the *Wallerman* stipulation. At the time of his trial, petitioner could have prevented a jury from learning the nature of three prior incidents of sexual assault by stipulating to the elements of the charged offense the "other acts" evidence was meant to prove. Petitioner claims that had he known about the *Wallerman* stipulation, he would not have agreed to waive his right to a jury trial, thus making his waiver unknowing and unintelligent.

The Wisconsin Court of Appeals found that trial counsel's lack of knowledge of the *Wallerman* stipulation was deficient performance. *Silva*, 670 N.W.2d at 389. The court held, however, that petitioner was not prejudiced by trial counsel's deficient performance. *Id.* The court based its holding on *Lockhart v. Fretwell*, 506 U.S. 364 (1993), in which the Court held that the prejudice prong of the *Strickland* test should be based on the laws at the time of the appeal. *See Id.* at 372. The decision in *Wallerman* was overturned by the decision in *State v. Veach*, 648 N.W.2d 447 (Wis. 2002). In *Veach*, the court held that the State is not obligated to accept *Wallerman* stipulations. *Id.* at ¶ 118. Thus, petitioner was not entitled to a jury that was kept in the dark concerning his prior sex offenses involving children. The Wisconsin Court of Appeals properly rejected his ineffective assistance claim and concluded, based on *Lockhart*, that trial counsel's lack of knowledge of the *Wallerman* stipulation did not prejudice petitioner.

14

But petitioner also claims that his waiver was rendered involuntary by counsel's failure to advise him of *Wallerman*, and claims he is entitled to relief on that basis regardless of prejudice. The right to a jury trial can only be waived where the defendant, personally and on the record, makes a voluntary, knowing and intelligent waiver with a sufficient awareness of the relevant circumstances and probable consequences. *Brady v. United States*, 397 U.S. 742, 748 (1970). Determining whether a defendant's waiver is voluntary, knowing and intelligent is done on the specific facts of a case. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942). The court must "indulge every reasonable presumption against waiver" of the right to a jury trial. *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938). When waiving the right to a jury trial, the court should make the defendant aware that: the jury will be comprised of twelve of his peers; the verdict must be unanimous; the defendant can participate in the selection of the jury; and that absent a trial by jury the judge will decide the defendant's guilt or innocence. *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981).

Petitioner does not assert that he was not informed of the information required by *Delgado*. Rather, petitioner claims that, because he was not told of a procedural right, he could not make an intelligent waiver of his rights. The Wisconsin Court of Appeals accepted the ruling of the post-conviction court that the waiver was knowing and intelligent. *Silva*, 670 N.W.2d at 394. The postconviction court found that petitioner decided to waive his right to a jury trial before the State sought to introduce "other acts" evidence (Postconviction Tr. at 68), and the Wisconsin Court of Appeals accepted this finding. *Silva*, 670 N.W.2d at 394. In addition, the postconviction court found, and the Wisconsin Court of Appeals accepted, that petitioner decided to waive his right to a jury trial because he was concerned with cross-examining the six year-old victim before a jury. (Postconviction Tr. at 70); *Silva*, 670 N.W.2d at 394. The Wisconsin Court of Appeals also found

15

that petitioner had previously waived his right to a jury, indicating that he understood the significance of waiving the right. *Silva*, 670 N.W.2d at 394. These findings are not clearly erroneous. Therefore, petitioner's claim that he did not knowingly or intelligently waive his right to a jury trial fails.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus is **DENIED** and this case is **DISMISSED.**

Dated this   20th   day of December, 2005.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge